*Isaac Nutovic, Esq.*
*NUTOVIC & ASSOCIATES*
*Counsel to the Debtor*
*261 Madison Avenue, 26th Floor*
*New York, New York 10016*
*(212) 421-9100*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x

In re:                                        Chapter 11

      RAFI MANOR,                          Case No.  1-21-40976-NHL

              Debtor.

--------------------------------------------------------x

**DEBTOR'S MEMORANDUM OF LAW IN OPPOSITION TO**
**STORMFIELD CAPITAL FUNDING I LLC'S**
**<u>MOTION FOR RELIEF FROM THE AUTOMATIC STAY</u>**

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT………………………………………………………1

STATEMENT OF FACTS…………………………………………………………….1

ARGUMENT…………………………………………………………………………..1

     I.      Stormfield Bears the Burden of Proving Sufficient Cause to Lift the
Stay……………………………………………………………………….1

          A.     The <u>Sonnax</u> Factors Overwhelmingly Weigh Against
Lifting the Stay……………………………...……………………1

          B.     Stormfield May Proceed With Its Foreclosure Actions
Without the Debtor..…………………………………………...9

CONCLUSION………………………………………………………………………10

# TABLE OF AUTHORITIES

## <u>Cases</u>

Page(s)

<u>Carrera v. Bally Total Fitness of Greater New York (In re Bally Total Fitness of
Greater New York, Inc.)</u>

 411 B.R. 142 (S.D.N.Y. 2009)............................................................................3, 4

<u>In re Bogdanovich</u>

 292 F.3d 104 (2d Cir. 2002)..................................................................................2

<u>In re Curtis</u>

 40 B.R. 795 (Bankr. D. Utah 1984) ...........................................................5, 6, 7

<u>In re Ebadi</u>

 448 B.R. 308 (Bankr. E.D.N.Y. 2011)..................................................................9

<u>In re Int'l Total Servs., Inc.</u>

 2006 WL 2504430 (E.D.N.Y. Aug. 28, 2006)....................................................4

<u>In re Living Hope Se., LLC</u>

 505 B.R. 237 (Bankr. E.D. Ark. 2014) ................................................................8

<u>In re Motors Liquidation Co.,</u>

 2010 WL 4630327, at *5 (S.D.N.Y. Nov. 8, 2010)............................................4

<u>In re Northwest Airlines Corp.</u>

 2006 WL 687163 (Bankr. S.D.N.Y. Mar. 10, 2009) ..........................................8

<u>In re Schick</u>

 232 B.R. 589 (Bankr. S.D.N.Y. 1999)................................................................1

<u>In re Sonnax Indus., Inc.</u>

 907 F.2d 1280 (2d Cir. 1990)...................................................................... *passim*

In re Residential Capital, LLC

      2012 WL 3556912 (Bankr. S.D.N.Y. Aug. 16, 2012) ........................................................3

In re SquareTwo Fin. Servs. Corp.

      2017 WL 4012818 (Bankr. S.D.N.Y. Sept. 11, 2017)....................................................6, 8

In re SunEdison, Inc.

      557 B.R. 303 (Bankr. S.D.N.Y. 2016)....................................................................3, 6, 7, 8

In re WorldCom, Inc.

      2007 WL 841948 (Bankr. S.D.N.Y. Mar. 12, 2007) ................................................. *passim*

Lawrence v. Motors Liquidation Co. (In re Motors Liquidation Co.)

      2010 WL 4630327 (S.D.N.Y. Nov. 8, 2010)....................................................................3, 6

Maxwell v. Mazor

      2016 WL 1554713 (Md. Ct. Spec. App. Apr. 18, 2016) ...................................................10

Musso v. Hirsch

      2011 WL 4543225 (E.D.N.Y. Sept. 29, 2011) ....................................................................4

St. Clair v. Beneficial Mortg. Co. (In re St. Clair)

      251 B.R. 660 (D.N.J. 2000) ...............................................................................................9

Teachers Ins. & Annuity Ass'n of Am. v. Butler

      803 F.2d 61 (2d Cir. 1986).................................................................................................3

## PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted on behalf of **RAFI MANOR**

(the "Debtor"), in opposition to the motion of **STORMFIELD CAPITAL FUNDING I LLC**

("Stormfield") for an Order granting relief from the automatic stay.

## SUMMARY OF ARGUMENT

Stormfield seeks to lift the automatic stay to continue four separate foreclosure

actions. Stormfield wants to negate the automatic stay in a situation for which the automatic stay

was specifically designed—giving the Debtor a breathing spell from multiple litigations. The

Debtor's Statement of Financial Affairs [ECF #1] lists the Debtor as a defendant in four other

multiparty litigations aside from the four separate foreclosure actions Stormfield has

commenced. (See Exhibit A, relevant page attached). There is absolutely no reason that the

Debtor cannot be severed from these foreclosure actions so that Stormfield can continue against

the non-debtors. There is no is no allegation that the property being foreclosed on is worth less

than the debt guaranteed by the Debtor; for all we know Stormfield may be imposing a burden of

defense on the Debtor without it even having any economic meaning to Stormfield. (Moreover,

Stormfield nowhere annexes the operative document – the guarantee-- evidencing the Debtor's

liability. Stormfield filed claim number 12 in this case also omitting the guarantee documents.

## ARGUMENT

**I.      Stormfield Bears the Burden of Proving Sufficient Cause to Lift the Stay.**

It is well settled that the movant bears the burden of establishing sufficient cause

to justify lifting the automatic stay. In re Sonnax Indus., Inc., 907 F.2d 1280, 1285 (2d Cir. 1990)

("If the movant fails to make an initial showing of cause… the court should deny relief without

requiring any showing from the debtor that it is entitled to continued protection.")

If the movant fails to demonstrate sufficient cause, the burden does not shift; rather, the court should refuse to grant relief from the stay. In re Schick, 232 B.R. 589, 600 (Bankr. S.D.N.Y. 1999). Here, Stormfield has failed to advance a cogent reason to lift the stay from what is a routine type of litigation where the Debtor's participation is peripheral at best.

A.    **The Sonnax Factors Overwhelmingly Weigh Against Lifting the Stay.**

Contrary to Stormfield's conclusory allegations, an examination of the factors set forth in In re Sonnax Indus., Inc., 907 F.2d 1280, 1286 (2d Cir. 1990), reveals that the circumstances herein overwhelmingly weigh against lifting the stay. See In re WorldCom, Inc., 2007 WL 841948, at *7 (Bankr. S.D.N.Y. Mar. 12, 2007) (finding that, where a movant fails to establish a Sonnax factor in his favor, the factor weighs in favor of the debtor).

1.    With respect to the first Sonnax factor, whether relief would result in a partial or complete resolution of the issues, Stormfield summarily argues that this factor falls in its favor. Courts have routinely found, however, that this factor weighs against lifting the stay where, as here, the possibility of obtaining a final resolution with respect to a state court judgment is potentially years away. In re Bogdanovich, 292 F.3d 104, 110–11 (2d Cir. 2002) (holding that a state court judgment would not completely resolve the issues because it would not be final for collateral estoppel purposes until the appellate process had concluded or the time to take an appeal had passed); In re SunEdison, Inc., 557 B.R. 303, 308–10 (Bankr. S.D.N.Y. 2016) (finding this factor weighed against lifting the stay where "final resolution following the exhaustion of the appellate process may be years away, and occur long after the Debtors have confirmed a plan.").

2.    Contrary to Stormfield's unsupported allegations, the second Sonnax factor, lack of any connection with or interference with the bankruptcy case, falls squarely

against lifting the stay in this case.

One of the purposes of the automatic stay is to allow the debtor a break from litigation so that he may devote substantial efforts to developing a plan of reorganization. In re SunEdison, Inc., 557 B.R. 303, 308 (Bankr. S.D.N.Y. 2016) (citing Carrera v. Bally Total Fitness of Greater New York (In re Bally Total Fitness of Greater New York, Inc.), 411 B.R. 142, 147 (S.D.N.Y. 2009); Teachers Ins. & Annuity Ass'n of Am. v. Butler, 803 F.2d 61, 64 (2d Cir. 1986) (noting that the automatic stay "provides the debtor with 'a breathing spell from his creditors'" (quoting S. Rep. No. 95-989, at 54-55 (1978))).

Permitting the state court action to proceed at this time will require the Debtor to engage in an expensive and time-consuming defense of four foreclosure actions (and, potentially four other litigations commenced pre-petition), diverting resources away from his reorganization efforts to the detriment of the estate and the Debtor's other creditors. In re SunEdison, Inc., 557 B.R. 303, 308 (Bankr. S.D.N.Y. 2016) (finding that there would be substantial interference with the progress of a bankruptcy case where proceeding with another litigation would divert the debtor's resources at a critical time in the bankruptcy case) (citing Lawrence v. Motors Liquidation Co. (In re Motors Liquidation Co.), 2010 WL 4630327, at *4 (S.D.N.Y. Nov. 8, 2010) (holding that stay relief would prejudice other creditors by forcing estate to expend resources to defend litigation)).

The debtor is also concerned that lifting the stay here will open the floodgates to other creditors to seek stay relief, which would, at the very least, threaten the Debtor's ability to reorganize. In re SunEdison, Inc., 557 B.R. 303, 308–09 (Bankr. S.D.N.Y. 2016) (citing In re Residential Capital, LLC, 2012 WL 3556912, at *3 (Bankr. S.D.N.Y. Aug. 16, 2012) ("Lifting the stay to allow [a creditor] to proceed with her damages claims in another forum could open

the floodgates for other movants who also seek stay relief. Such litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize."); <u>Carrera v. Bally Total Fitness of Greater New York (In re Bally Total Fitness of Greater New York, Inc.)</u>, 402 B.R. 616, 623 (Bankr. S.D.N.Y.) ("[G]ranting relief could open the floodgates to a multitude of similar motions causing further interference with the bankruptcy case."), <u>aff'd</u>, 411 B.R. 142 (S.D.N.Y. 2009); <u>In re Motors Liquidation Co.</u>, 2010 WL 4630327, at *5 (S.D.N.Y. Nov. 8, 2010) (noting that potential for opening floodgates is "the very state of affairs the automatic stay was enacted to prevent")).

Aside from the certain interference with the bankruptcy case, lifting the stay would also run contrary to this <u>Sonnax</u> factor because the contemplated state action is directly connected to the bankruptcy case. <u>In re WorldCom, Inc.</u>, No. 02 13533 AJG, 2007 WL 841948, at *6–7 (Bankr. S.D.N.Y. Mar. 12, 2007) (holding that the resolution of an amount that a debtor owes to a claimant is directly connected with a bankruptcy proceeding).

Stormfield points to two cases in purported support of its argument that this factor should fall in its favor, but neither case is factually analogous. Stormfield's reliance on <u>Musso v. Hirsch</u>, 2011 WL 4543225 (E.D.N.Y. Sept. 29, 2011), is inapposite because in that case it was the bankruptcy trustee who was seeking to lift the automatic stay to assist in the administration of the estate. The court found the trustee's position highly relevant to its determination that relief from the stay would be in the best interest of the estate. <u>Id.</u> at *10.

Stormfield also cited <u>In re Int'l Total Servs., Inc.</u>, 2006 WL 2504430 (E.D.N.Y. Aug. 28, 2006), in support of its motion, but in that case the debtor had no objection to lifting the stay, and the court had expressly found that lifting the stay would have "no appreciable effect on the debtor or the debtor's estate." <u>Id.</u> at *2.

"The most important factor in determining whether to grant relief from the automatic stay to permit litigation against the debtor in another forum is the effect of such litigation on the administration of the estate. Even slight interference with the administration may be enough to preclude relief in the absence of a commensurate benefit." In re Curtis, 40 B.R. 795, 806–07 (Bankr. D. Utah 1984) (refusing to lift the stay and holding: "Interference by creditors in the administration of the estate, no matter how small, through the continuance of a preliminary skirmish in a suit outside the Bankruptcy Court is prohibited. In short, the Debtor should not be required to devote energy to this collateral matter at this juncture.").

Here, the time, energy, and resources that the Debtor would have to devote to defending himself in the contemplated state court action would negatively impact the Debtor's ability to construct a meaningful reorganization plan.

3.      The third Sonnax factor, whether the other proceeding involves the debtor as a fiduciary, is not applicable here.

4.      Stormfield argues that the fourth factor, whether a specialized tribunal with the necessary expertise has been established to hear the cause of action, falls in its favor. Stormfield fails to acknowledge, however, that the Queens County Supreme Court is not a specialized tribunal, nor has it been established to hear the action. While that court certainly possesses the necessary expertise to hear a foreclosure proceeding, it is not unique in its ability to do so. In re WorldCom, Inc., 2007 WL 841948, at *7 (Bankr. S.D.N.Y. Mar. 12, 2007) ("[T]he Court notes that the Mississippi District Court is not a specialized tribunal; further no such specialized tribunal is necessary to adjudicate the claims set forth in the Complaint."); In re Curtis, 40 B.R. 795, 805 (Bankr. D. Utah 1984) ("Movants' complaint alleges causes of action for fraud, negligent misrepresentation and breach of contract. These matters do not involve

unsettled questions of state law, nor do they require adjudication before a specialized tribunal. Rather, they are matters routinely heard in the bankruptcy court.")

     5.     The fifth <u>Sonnax</u> factor, whether the debtor's insurer has assumed full responsibility for defending it, weighs against lifting the stay as no such insurer exists. All costs and expenses associated with the defense of this, and any other, additional litigation will need to be borne by the Debtor alone.

     6.     The sixth <u>Sonnax</u> factor, whether the action primarily involves third parties, still militates against lifting the stay where, as here, the claimant is directly seeking to obtain a judgment against the Debtor as an end-run around the bankruptcy process. <u>In re Curtis</u>, 40 B.R. 795, 805 (Bankr. D. Utah 1984) ("Movants seek more than an adjudication of the liability of third parties. They want to obtain a nondischargeable claim against the debtors in the state court action.").

     7.     The seventh <u>Sonnax</u> factor, whether litigation in another forum would prejudice the interests of other creditors, weighs against lifting the stay where, as here, proceeding with the state court action will divert the Debtor's resources at a critical time in the case. <u>In re SunEdison, Inc.</u>, 557 B.R. 303, 308 (Bankr. S.D.N.Y. 2016); <u>In re SquareTwo Fin. Servs. Corp.</u>, 2017 WL 4012818, at *7 (Bankr. S.D.N.Y. Sept. 11, 2017) (finding this factor weighs against lifting the stay where "increased costs associated with litigation in a separate forum would prejudice the interests of [the Debtor]") (quoting <u>In re WorldCom, Inc.</u>, 2007 WL 841948, at *7 (Bankr. S.D.N.Y. Mar. 12, 2007)); <u>Lawrence v. Motors Liquidation Co. (In re Motors Liquidation Co.)</u>, 2010 WL 4630327, at *4 (S.D.N.Y. Nov. 8, 2010) (holding that stay relief would prejudice other creditors by forcing the estate to expend resources to defend against the litigation)).

**8 - 9.** The eighth and ninth <u>Sonnax</u> factors, whether the judgment claim arising from the other action is subject to equitable subordination, and whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor, are inapplicable here and therefore do not support the relief sought herein.

**10.** The tenth factor, the interests of judicial economy and the expeditious and economical resolution of litigation, falls in the Debtor's favor. The interests of judicial economy are best served here by permitting all claims involving the Debtor to be resolved through a single bankruptcy process. This is particularly true because the contemplated state court foreclosure action is in the very early stages. <u>In re Sonnax Indus., Inc.</u>, 907 F.2d 1280, 1287 (2d Cir. 1990) (holding that, where a state court litigation has not progressed even to the discovery stage, a bankruptcy proceeding provides the most expeditious forum for the resolution of disputed issues between a debtor and creditor); <u>In re SunEdison, Inc.</u>, 557 B.R. 303, 308–10 (Bankr. S.D.N.Y. 2016) (holding that a state court litigation in its infancy is not a more efficient forum to resolve debtor-creditor disputes); <u>In re Curtis</u>, 40 B.R. 795, 805 (Bankr. D. Utah 1984) (finding that the court should only permit an action to proceed to completion in another tribunal if that action had already progressed to the point where it would be a waste of the parties' and the court's resources to begin anew in the bankruptcy court).

Additionally, maintaining the automatic stay so that all related cases will be decided in one forum provides the best chance of reducing the total litigation involving this Debtor. <u>In re WorldCom, Inc.</u>, 2007 WL 841948, at *8 (Bankr. S.D.N.Y. Mar. 12, 2007) ("The purpose of the… automatic stay is to allow the Bankruptcy Court to administer promptly the claims before it, a purpose which would be undermined by constant disruption if separate claims before other courts were permitted to continue until final resolution in the courts, particularly

when the claims involve issues of law easily disposed of by the Bankruptcy Court."); <u>In re
Living Hope Se., LLC</u>, 505 B.R. 237, 245 (Bankr. E.D. Ark. 2014) ("Allowing the Trustee to
proceed with his efforts… without the distraction of trying of [a state court] lawsuit… is
reasonably certain to reduce the total amount of litigation in this case, which is beneficial to both
the parties, the Debtor's creditors, and the courts. Under these circumstances, the Court does not
find that judicial economy weighs in favor of granting… relief from stay.").

        Lifting the stay herein would also increase the potential for similarly situated
creditors to file motions, which could exponentially increase the litigation involving this Debtor.
<u>In re SquareTwo Fin. Servs. Corp.</u>, 2017 WL 4012818, at *7 (Bankr. S.D.N.Y. Sept. 11, 2017)
("In evaluating this factor, courts consider whether lifting the stay might invite similar motions
from similarly situated creditors." (citing <u>In re Northwest Airlines Corp.</u>, 2006 WL 687163, at *2
(Bankr. S.D.N.Y. Mar. 10, 2009) (lifting the stay "would open the floodgates for similar motions
and cause the Debtors to refocus their energies on litigation before other courts rather than
emergence from Chapter 11.")).

      **11.**    The eleventh, whether the parties are ready for trial in the other
proceeding, strongly favors against lifting the stay, as Stormfield's contemplated foreclosure
litigation has barely been initiated. Lifting the stay and allowing Stormfield to continue a state
court action would defeat the goal of "an efficient and expeditious claims resolution process." <u>In
re WorldCom, Inc.</u>, 2007 WL 841948, at *8 (Bankr. S.D.N.Y. Mar. 12, 2007) (refusing to lift the
stay "[b]ased on the interests of judicial economy and the expeditious and economical resolution
of litigation, and on the showing that the parties are not ready for trial in the [state court]
action").

12.    The twelfth and final <u>Sonnax</u> factor, the impact of the stay on the parties and the balance of harms, weighs against lifting the stay herein. Maintaining the stay herein would not deprive Stormfield of its right to collect from the Debtor in the context of the bankruptcy proceeding; however, lifting the stay would threaten the Debtor's attempts to reorganize. <u>In re Sonnax Indus., Inc.</u>, 907 F.2d 1280, 1287 (2d Cir. 1990); <u>In re SunEdison, Inc.</u>, 557 B.R. 303, 308–10 (Bankr. S.D.N.Y. 2016) (finding no adverse effect on a creditor whose claim would be paid, if at all, under a confirmed plan, versus the considerable detriment the debtor would suffer if forced to defend itself in a separate litigation). With  respect to the claims against the non-debtors, Stormfield is not precluded form severing the Debtor from the case and continuing the foreclosure process.

The <u>Sonnax</u> factors overwhelmingly weigh against lifting the automatic stay. The circumstances here support this court as being in the best position to administer claims against the Debtor. Stormfield has failed to prove that its claim against the Debtor would be resolved more expeditiously or economically in the contemplated state court action. In fact, granting Stormfield's motion would disrupt the Debtor's reorganization efforts to the detriment of the estate and its other creditors.

**B.    Stormfield May Proceed With Its Foreclosure Action Without the Debtor.**

As has already been noted, contrary to Stormfield's contentions, Stormfield may pursue its foreclosure action in state court without running afoul of the automatic stay by removing the Debtor as a defendant therein. <u>In re Ebadi</u>, 448 B.R. 308, 318 (Bankr. E.D.N.Y. 2011) ("An *in rem* action against property in which a debtor does not have an ownership interest would likely not run afoul with the automatic stay. <u>See</u> <u>St. Clair v. Beneficial Mortg. Co. (In re St. Clair)</u>, 251 B.R. 660 (D.N.J. 2000) (holding that enforcing a foreclosure action, which under

New Jersey law was purely *quasi in rem,* on property in which debtor already had no proprietary interest was not stayed by Section 362(a)). As noted above, such an action would likely be governed by the principle that a creditor can generally pursue non-bankrupt obligors freely. An action that is at least partially *in personam* against a debtor, on the other hand, is stayed by the Bankruptcy Code, and continuing such an action constitutes a violation of the automatic stay. 11 U.S.C. § 362(a).”); Maxwell v. Mazor, 2016 WL 1554713, at *7 (Md. Ct. Spec. App. Apr. 18, 2016) (“Unlike the proceedings pursued by the lien holder in the foreclosure litigation in Ebadi, there was no claim asserted against Maxwell individually for personal liability in the present foreclosure proceedings. There was no count seeking relief on the promissory note. Consequently, we conclude that the circuit court did not err in applying the general principle that permits a creditor to pursue non-bankrupt obligors even if one of their co-obligors has filed a bankruptcy petition.”).

Stormfield can proceed with its litigation without involving the Debtor.

## CONCLUSION

Based on the foregoing, it is respectfully submitted that an Order should be entered denying Stormfield’s motion in its entirety, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
    June 14, 2021

                                   **NUTOVIC & ASSOCIATES**
                                   Attorneys for Debtor

                                   By:  *s/Isaac Nutovic*
                                       Isaac Nutovic, Esq.
                                       261 Madison Avenue, 26th Floor
                                       New York, New York 10016
                                       (212) 421-9100

EXHIBIT   A

| Debtor 1 | **Rafi Manor** | Case number *(if known)* | |
|---|---|---|---|

**7.** **Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?**
*Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations, such as child support and alimony.

■ No
☐ Yes. List all payments to an insider.

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment |
|---|---|---|---|---|

**8.** **Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?**
Include payments on debts guaranteed or cosigned by an insider.

☐ No
■ Yes. List all payments to an insider

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment<br>Include creditor's name |
|---|---|---|---|---|
| Hadas Morgenstern<br>8535 212th st<br>Queens Village, NY 11427 | Property<br>Transfered<br>10/19/2020 | $0.00 | $0.00 | Sold apartment<br>Yahlom 7 Apartment #65<br>Ber Yaakov, Isreal |

**Part 4:**    **Identify Legal Actions, Repossessions, and Foreclosures**

**9.** **Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

☐ No
■ Yes. Fill in the details.

| Case title<br>Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| In the Matter of the Application of M1 Development LLC and Rafi Manor against Realya Crown Heights, LLC<br>Index Number 651643/2020 | Civil | New York County, Supreme Court NY<br>60 Centre St<br>New York, NY | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| Realya Crown Heights, LLC v. M Rental Brooklyn, LLC, M1 Development LLC and Rafi Manor<br>01-20-0000-4684 | Arbitration | American Arbitration Association | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| Stormfield Caital Funding I, LLC against Freeman Villa LLC, Rafi Manor (a/k/a Rafael Manor) and John and Jane Doe<br>524160/2020 | Foreclosure | Kings County, Supreme Court NY | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| Marius Tapper and Terri Abplanalp Tapper against 116 India Street Villa LLC, M Remodeling Corp., Rafi Mantor a/k/a Rafael Manor, David Sapan, and Hadas Harkmon<br>514860/2018 | | Kings County Supreme Court of NY | ■ Pending<br>☐ On appeal<br>☐ Concluded |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

| Debtor 1 | **Rafi Manor** | | Case number (*if known*) | |
|---|---|---|---|---|

| Case title<br>Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| **Marius Tapper and Terri Abplanalp Tapper against 116 India Street Villa LLC, M Remodeling Corp., Rafi Mantor a/k/a Rafael Manor, David Sapan, Hadas Harkmon, Anthony Sucichm R.A. d/b/a Anthony Cucich Architect, SM Studio Inc. ABC Inc./Corp./LLC/LP/Partners 1-9, and John/Jane Does 1-50**<br>**522967/2018** | | **Kings County, Supreme Court of NY** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| **54 Dupont Holdings LLC and Realya Investments LLC against 54 Dupont Villa LLC and Rafi Manor**<br>**650901/2020** | | **New York County, Supreme Court of NY** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| **Stormfield Capital Funding I LLC against M Rental Brooklyn LLC**<br>**524166/2020** | **Foreclosure** | **Kings County, Supreme Court NY** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| **Stormfield Capital Funding I LLC against Brooklyn Development 24 Corp, et. al.**<br>**524163/2020** | **Foreclosure** | **Kings County, Supreme Court NY** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| **Stormfield Capital Funding I LLC against 52 Herbert Villa LLC et al**<br>**524154/2020** | **Foreclosure** | **Kings County, Supreme Court NY** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| **Urbano Group LLC against 438 Herkimer Villa LLC, et al**<br>**501377/2019** | **Foreclosure** | **Kings County, Supreme Court NY** | ■ Pending<br>☐ On appeal<br>☐ Concluded |

10. **Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied?**
Check all that apply and fill in the details below.

☐ No. Go to line 11.
■ Yes. Fill in the information below.

| Creditor Name and Address | Describe the Property<br><br>Explain what happened | Date | Value of the property |
|---|---|---|---|
| **Realya Crown Heights, LLC**<br>**C/O CORPORATION SERVICE COMPANY**<br>**80 State Street**<br>**Albany, NY 12207** | **Certain assets, whether real or personal property, tangible or intangible, accounts receivables or payables, debts, or amounts owing to M Rental in a fair market value amount not to exceed $2,000,000.00**<br><br>☐ Property was repossessed.<br>☐ Property was foreclosed.<br>☐ Property was garnished.<br><br>■ Property was attached, seized or levied. | | **$2,000,000.00** |