*Isaac Nutovic, Esq.*
*NUTOVIC & ASSOCIATES*
*Counsel to the Debtor*
*261 Madison Avenue, 26th Floor*
*New York, New York 10016*
*(212) 421-9100*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

In re: Chapter 11

RAFI MANOR, Case No. 1-21-40976-NHL

Debtor.

-------------------------------------------------------x

**DEBTOR'S MEMORANDUM OF LAW IN OPPOSITION TO URBANO GROUP LLC'S <u>MOTION FOR RELIEF FROM THE AUTOMATIC STAY</u>**

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT……………………………………………………………1

STATEMENT OF FACTS…………………………………………………………….1

ARGUMENT………………………………………………………………………..1

I. Urbano Bears the Burden of Proving Sufficient Cause to Lift the Stay…………………………………………………………………….1

A. The Sonnax Factors Overwhelmingly Weigh Against Lifting the Stay……………………………...……………………1

B. Urbano May Proceed With Its Foreclosure Actions Without the Debtor..……………………………………………...9

CONCLUSION……………………………………………………………………10

# TABLE OF AUTHORITIES

## Cases

Page(s)

Carrera v. Bally Total Fitness of Greater New York (In re Bally Total Fitness of Greater New York, Inc.)

411 B.R. 142 (S.D.N.Y. 2009)....................3, 4

In re Bogdanovich

292 F.3d 104 (2d Cir. 2002)....................2

In re Curtis

40 B.R. 795 (Bankr. D. Utah 1984)....................5, 6, 7

In re Ebadi

448 B.R. 308 (Bankr. E.D.N.Y. 2011)....................9

In re Int'l Total Servs., Inc.

2006 WL 2504430 (E.D.N.Y. Aug. 28, 2006)....................4

In re Living Hope Se., LLC

505 B.R. 237 (Bankr. E.D. Ark. 2014)....................8

In re Motors Liquidation Co.,

2010 WL 4630327, at *5 (S.D.N.Y. Nov. 8, 2010)....................4

In re Northwest Airlines Corp.

2006 WL 687163 (Bankr. S.D.N.Y. Mar. 10, 2009)....................8

In re Schick

232 B.R. 589 (Bankr. S.D.N.Y. 1999)....................1

In re Sonnax Indus., Inc.

907 F.2d 1280 (2d Cir. 1990).................... *passim*

In re Residential Capital, LLC

2012 WL 3556912 (Bankr. S.D.N.Y. Aug. 16, 2012) ........................................................ 3

In re SquareTwo Fin. Servs. Corp.

2017 WL 4012818 (Bankr. S.D.N.Y. Sept. 11, 2017) .................................................... 6, 8

In re SunEdison, Inc.

557 B.R. 303 (Bankr. S.D.N.Y. 2016) .................................................................... 3, 6, 7, 8

In re WorldCom, Inc.

2007 WL 841948 (Bankr. S.D.N.Y. Mar. 12, 2007) ................................................ *passim*

Lawrence v. Motors Liquidation Co. (In re Motors Liquidation Co.)

2010 WL 4630327 (S.D.N.Y. Nov. 8, 2010) .................................................................. 3, 6

Maxwell v. Mazor

2016 WL 1554713 (Md. Ct. Spec. App. Apr. 18, 2016) .................................................. 10

Musso v. Hirsch

2011 WL 4543225 (E.D.N.Y. Sept. 29, 2011) .................................................................... 4

St. Clair v. Beneficial Mortg. Co. (In re St. Clair)

251 B.R. 660 (D.N.J. 2000) ................................................................................................ 9

Teachers Ins. & Annuity Ass'n of Am. v. Butler

803 F.2d 61 (2d Cir. 1986) .................................................................................................. 3

## PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted on behalf of **RAFI MANOR** (the "Debtor"), in opposition to the motion of **URBANO GROUP LLC** ("Urbano") for an Order granting relief from the automatic stay.

## SUMMARY OF ARGUMENT

Urbano seeks to lift the automatic stay to proceed with a foreclosure action. Urbano wants to negate the automatic stay in a situation for which the automatic stay was specifically designed—giving the Debtor a breathing spell from multiple litigations. The Debtor's Statement of Financial Affairs [ECF #1] lists the Debtor as a defendant in eight multiparty litigations. There is absolutely no reason why Urbano cannot proceed against the non-debtor and sever the Debtor as a defendant. Urbano makes no allegation that the property being foreclosed on is worth less than the debt guaranteed by the Debtor; for all we know Urbano may be imposing a burden of defense on the Debtor without it even having any economic meaning to Urbano. In a virtually identical factual situation this Court denied relief to another mortgagee seeking to continue a foreclosure proceeding in which the Debtor is named as a defendant because of a guarantee. See ECF #59.

Urbano has not filed a memorandum of law or included a discussion of the applicable law governing its request to lift the automatic stay; its motion can be denied for this reason alone.

## ARGUMENT

### I. Urbano Bears the Burden of Proving Sufficient Cause to Lift the Stay.

It is well settled that the movant bears the burden of establishing sufficient cause to justify lifting the automatic stay. In re Sonnax Indus., Inc., 907 F.2d 1280, 1285 (2d Cir. 1990)

("If the movant fails to make an initial showing of cause… the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection.")

If the movant fails to demonstrate sufficient cause, the burden does not shift; rather, the court should refuse to grant relief from the stay. In re Schick, 232 B.R. 589, 600 (Bankr. S.D.N.Y. 1999). Here, Urbano has failed to advance a cogent reason to lift the stay from what is a routine type of litigation where the Debtor's participation is peripheral at best.

**A. The Sonnax Factors Overwhelmingly Weigh Against Lifting the Stay.**

An examination of the factors set forth in In re Sonnax Indus., Inc., 907 F.2d 1280, 1286 (2d Cir. 1990), reveals that the circumstances herein overwhelmingly weigh against lifting the stay. See In re WorldCom, Inc., 2007 WL 841948, at *7 (Bankr. S.D.N.Y. Mar. 12, 2007) (finding that, where a movant fails to establish a Sonnax factor in his favor, the factor weighs in favor of the debtor).

**1.** The first Sonnax factor, whether relief would result in a partial or complete resolution of the issues, falls in favor of the Debtor. Courts have routinely found, that this factor weighs against lifting the stay where, as here, the possibility of obtaining a final resolution with respect to a state court judgment is potentially years away. In re Bogdanovich, 292 F.3d 104, 110–11 (2d Cir. 2002) (holding that a state court judgment would not completely resolve the issues because it would not be final for collateral estoppel purposes until the appellate process had concluded or the time to take an appeal had passed); In re SunEdison, Inc., 557 B.R. 303, 308–10 (Bankr. S.D.N.Y. 2016) (finding this factor weighed against lifting the stay where "final resolution following the exhaustion of the appellate process may be years away, and occur long after the Debtors have confirmed a plan.").

**2.** The second Sonnax factor, lack of any connection with or interference

with the bankruptcy case, also falls squarely against lifting the stay in this case.

One of the purposes of the automatic stay is to allow the debtor a break from litigation so that he may devote substantial efforts to developing a plan of reorganization. In re SunEdison, Inc., 557 B.R. 303, 308 (Bankr. S.D.N.Y. 2016) (citing Carrera v. Bally Total Fitness of Greater New York (In re Bally Total Fitness of Greater New York, Inc.), 411 B.R. 142, 147 (S.D.N.Y. 2009); Teachers Ins. & Annuity Ass'n of Am. v. Butler, 803 F.2d 61, 64 (2d Cir. 1986) (noting that the automatic stay "provides the debtor with 'a breathing spell from his creditors'" (quoting S. Rep. No. 95-989, at 54-55 (1978))).

Permitting the state court action to proceed at this time will require the Debtor to engage in an expensive and time-consuming defense of a foreclosure action (and, potentially seven other litigations commenced pre-petition), diverting resources away from his reorganization efforts to the detriment of the estate and the Debtor's other creditors. In re SunEdison, Inc., 557 B.R. 303, 308 (Bankr. S.D.N.Y. 2016) (finding that there would be substantial interference with the progress of a bankruptcy case where proceeding with another litigation would divert the debtor's resources at a critical time in the bankruptcy case) (citing Lawrence v. Motors Liquidation Co. (In re Motors Liquidation Co.), 2010 WL 4630327, at *4 (S.D.N.Y. Nov. 8, 2010) (holding that stay relief would prejudice other creditors by forcing estate to expend resources to defend litigation)).

The debtor is also concerned that lifting the stay here will open the floodgates to other creditors to seek stay relief, which would, at the very least, threaten the Debtor's ability to reorganize. In re SunEdison, Inc., 557 B.R. 303, 308–09 (Bankr. S.D.N.Y. 2016) (citing In re Residential Capital, LLC, 2012 WL 3556912, at *3 (Bankr. S.D.N.Y. Aug. 16, 2012) ("Lifting the stay to allow [a creditor] to proceed with her damages claims in another forum could open

the floodgates for other movants who also seek stay relief. Such litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize."); Carrera v. Bally Total Fitness of Greater New York (In re Bally Total Fitness of Greater New York, Inc.), 402 B.R. 616, 623 (Bankr. S.D.N.Y.) ("[G]ranting relief could open the floodgates to a multitude of similar motions causing further interference with the bankruptcy case."), aff'd, 411 B.R. 142 (S.D.N.Y. 2009); In re Motors Liquidation Co., 2010 WL 4630327, at *5 (S.D.N.Y. Nov. 8, 2010) (noting that potential for opening floodgates is "the very state of affairs the automatic stay was enacted to prevent")).

Aside from the certain interference with the bankruptcy case, lifting the stay would also run contrary to this Sonnax factor because the contemplated state action is directly connected to the bankruptcy case. In re WorldCom, Inc., No. 02 13533 AJG, 2007 WL 841948, at *6–7 (Bankr. S.D.N.Y. Mar. 12, 2007) (holding that the resolution of an amount that a debtor owes to a claimant is directly connected with a bankruptcy proceeding).

"The most important factor in determining whether to grant relief from the automatic stay to permit litigation against the debtor in another forum is the effect of such litigation on the administration of the estate. Even slight interference with the administration may be enough to preclude relief in the absence of a commensurate benefit." In re Curtis, 40 B.R. 795, 806–07 (Bankr. D. Utah 1984) (refusing to lift the stay and holding: "Interference by creditors in the administration of the estate, no matter how small, through the continuance of a preliminary skirmish in a suit outside the Bankruptcy Court is prohibited. In short, the Debtor should not be required to devote energy to this collateral matter at this juncture.").

Here, the time, energy, and resources that the Debtor would have to devote to defending himself in the contemplated state court action would negatively impact the Debtor's

ability to construct a meaningful reorganization plan.

**3.** The third Sonnax factor, whether the other proceeding involves the debtor as a fiduciary, is not applicable here.

**4.** The fourth factor, whether a specialized tribunal with the necessary expertise has been established to hear the cause of action, falls in its favor. The Supreme Court of New York is not a specialized tribunal, nor has it been established to hear the action. While that court certainly possesses the necessary expertise to hear a foreclosure proceeding, it is not unique in its ability to do so. In re WorldCom, Inc., 2007 WL 841948, at *7 (Bankr. S.D.N.Y. Mar. 12, 2007) ("[T]he Court notes that the Mississippi District Court is not a specialized tribunal; further no such specialized tribunal is necessary to adjudicate the claims set forth in the Complaint."); In re Curtis, 40 B.R. 795, 805 (Bankr. D. Utah 1984) ("Movants' complaint alleges causes of action for fraud, negligent misrepresentation and breach of contract. These matters do not involve unsettled questions of state law, nor do they require adjudication before a specialized tribunal. Rather, they are matters routinely heard in the bankruptcy court.")

**5.** The fifth Sonnax factor, whether the debtor's insurer has assumed full responsibility for defending it, weighs against lifting the stay as no such insurer exists. All costs and expenses associated with the defense of this, and any other, additional litigation will need to be borne by the Debtor alone.

**6.** The sixth Sonnax factor, whether the action primarily involves third parties, still militates against lifting the stay where, as here, the claimant is directly seeking to obtain a judgment against the Debtor as an end-run around the bankruptcy process. In re Curtis, 40 B.R. 795, 805 (Bankr. D. Utah 1984) ("Movants seek more than an adjudication of the liability of third parties. They want to obtain a nondischargeable claim against the debtors in the

state court action.").

**7.** The seventh Sonnax factor, whether litigation in another forum would prejudice the interests of other creditors, weighs against lifting the stay where, as here, proceeding with the state court action will divert the Debtor's resources at a critical time in the case. In re SunEdison, Inc., 557 B.R. 303, 308 (Bankr. S.D.N.Y. 2016); In re SquareTwo Fin. Servs. Corp., 2017 WL 4012818, at *7 (Bankr. S.D.N.Y. Sept. 11, 2017) (finding this factor weighs against lifting the stay where "increased costs associated with litigation in a separate forum would prejudice the interests of [the Debtor]") (quoting In re WorldCom, Inc., 2007 WL 841948, at *7 (Bankr. S.D.N.Y. Mar. 12, 2007)); Lawrence v. Motors Liquidation Co. (In re Motors Liquidation Co.), 2010 WL 4630327, at *4 (S.D.N.Y. Nov. 8, 2010) (holding that stay relief would prejudice other creditors by forcing the estate to expend resources to defend against the litigation)).

**8 - 9.** The eighth and ninth Sonnax factors, whether the judgment claim arising from the other action is subject to equitable subordination, and whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor, are inapplicable here and therefore do not support the relief sought herein.

**10.** The tenth factor, the interests of judicial economy and the expeditious and economical resolution of litigation, falls in the Debtor's favor. The interests of judicial economy are best served here by permitting all claims involving the Debtor to be resolved through a single bankruptcy process. This is particularly true because the contemplated state court foreclosure action is in the early stages. In re Sonnax Indus., Inc., 907 F.2d 1280, 1287 (2d Cir. 1990) (holding that, where a state court litigation has not progressed even to the discovery stage, a bankruptcy proceeding provides the most expeditious forum for the resolution of disputed issues

between a debtor and creditor); In re SunEdison, Inc., 557 B.R. 303, 308–10 (Bankr. S.D.N.Y. 2016) (holding that a state court litigation in its infancy is not a more efficient forum to resolve debtor-creditor disputes); In re Curtis, 40 B.R. 795, 805 (Bankr. D. Utah 1984) (finding that the court should only permit an action to proceed to completion in another tribunal if that action had already progressed to the point where it would be a waste of the parties' and the court's resources to begin anew in the bankruptcy court).

Additionally, maintaining the automatic stay so that all related cases will be decided in one forum provides the best chance of reducing the total litigation involving this Debtor. In re WorldCom, Inc., 2007 WL 841948, at *8 (Bankr. S.D.N.Y. Mar. 12, 2007) ("The purpose of the… automatic stay is to allow the Bankruptcy Court to administer promptly the claims before it, a purpose which would be undermined by constant disruption if separate claims before other courts were permitted to continue until final resolution in the courts, particularly when the claims involve issues of law easily disposed of by the Bankruptcy Court."); In re Living Hope Se., LLC, 505 B.R. 237, 245 (Bankr. E.D. Ark. 2014) ("Allowing the Trustee to proceed with his efforts… without the distraction of trying of [a state court] lawsuit… is reasonably certain to reduce the total amount of litigation in this case, which is beneficial to both the parties, the Debtor's creditors, and the courts. Under these circumstances, the Court does not find that judicial economy weighs in favor of granting… relief from stay.").

Lifting the stay herein would also increase the potential for similarly situated creditors to file motions, which could exponentially increase the litigation involving this Debtor. In re SquareTwo Fin. Servs. Corp., 2017 WL 4012818, at *7 (Bankr. S.D.N.Y. Sept. 11, 2017) ("In evaluating this factor, courts consider whether lifting the stay might invite similar motions from similarly situated creditors." (citing In re Northwest Airlines Corp., 2006 WL 687163, at *2

(Bankr. S.D.N.Y. Mar. 10, 2009) (lifting the stay "would open the floodgates for similar motions and cause the Debtors to refocus their energies on litigation before other courts rather than emergence from Chapter 11.")).

**11.** The eleventh factor, whether the parties are ready for trial in the other proceeding, strongly favors against lifting the stay, as Urbano's contemplated foreclosure litigation is in its early stages. Lifting the stay and allowing Urbano to continue a state court action would defeat the goal of "an efficient and expeditious claims resolution process." In re WorldCom, Inc., 2007 WL 841948, at *8 (Bankr. S.D.N.Y. Mar. 12, 2007) (refusing to lift the stay "[b]ased on the interests of judicial economy and the expeditious and economical resolution of litigation, and on the showing that the parties are not ready for trial in the [state court] action").

**12.** The twelfth and final Sonnax factor, the impact of the stay on the parties and the balance of harms, weighs against lifting the stay herein. Maintaining the stay herein would not deprive Urbano of its right to collect from the Debtor in the context of the bankruptcy proceeding; however, lifting the stay would threaten the Debtor's attempts to reorganize. In re Sonnax Indus., Inc., 907 F.2d 1280, 1287 (2d Cir. 1990); In re SunEdison, Inc., 557 B.R. 303, 308–10 (Bankr. S.D.N.Y. 2016) (finding no adverse effect on a creditor whose claim would be paid, if at all, under a confirmed plan, versus the considerable detriment the debtor would suffer if forced to defend itself in a separate litigation). With respect to the claims against the non-debtors, Urbano is not precluded form severing the Debtor from the case and continuing the foreclosure process.

The Sonnax factors overwhelmingly weigh against lifting the automatic stay. The circumstances here support this court as being in the best position to administer claims against

the Debtor. Urbano has failed to prove that its claim against the Debtor would be resolved more expeditiously or economically in the contemplated state court action. In fact, granting Urbano's motion would disrupt the Debtor's reorganization efforts to the detriment of the estate and its other creditors.

**B. Urbano May Proceed With Its Foreclosure Action Without the Debtor.**

As has already been noted, Urbano may pursue its foreclosure action in state court without running afoul of the automatic stay by removing the Debtor as a defendant therein. In re Ebadi, 448 B.R. 308, 318 (Bankr. E.D.N.Y. 2011) ("An *in rem* action against property in which a debtor does not have an ownership interest would likely not run afoul with the automatic stay. See St. Clair v. Beneficial Mortg. Co. (In re St. Clair), 251 B.R. 660 (D.N.J. 2000) (holding that enforcing a foreclosure action, which under New Jersey law was purely *quasi in rem,* on property in which debtor already had no proprietary interest was not stayed by Section 362(a)). As noted above, such an action would likely be governed by the principle that a creditor can generally pursue non-bankrupt obligors freely. An action that is at least partially *in personam* against a debtor, on the other hand, is stayed by the Bankruptcy Code, and continuing such an action constitutes a violation of the automatic stay. 11 U.S.C. § 362(a)."); Maxwell v. Mazor, 2016 WL 1554713, at *7 (Md. Ct. Spec. App. Apr. 18, 2016) ("Unlike the proceedings pursued by the lien holder in the foreclosure litigation in Ebadi, there was no claim asserted against Maxwell individually for personal liability in the present foreclosure proceedings. There was no count seeking relief on the promissory note. Consequently, we conclude that the circuit court did not err in applying the general principle that permits a creditor to pursue non-bankrupt obligors even if one of their co-obligors has filed a bankruptcy petition.").

Urbano can proceed with its litigation without involving the Debtor.

**CONCLUSION**

Based on the foregoing, it is respectfully submitted that an Order should be entered denying Urbano's motion in its entirety, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
August 30, 2021

**NUTOVIC & ASSOCIATES**
Attorneys for Debtor

By: *s/Isaac Nutovic*
Isaac Nutovic, Esq.
261 Madison Avenue, 26th Floor
New York, New York 10016
(212) 421-9100